UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,
v.                                              Case No. 07-CR-57

THOMAS C. BALSIGER, ET AL.,

          Defendant.

ORDER ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATION (Doc. # 316), DENYING DEFENDANT BRUCE FURR'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR FIFTH AMENDMENT DUE PROCESS VIOLATIONS (Doc. # 254), AND DENYING DEFENDANTS BRUCE FURR'S AND STEVEN FURR'S JOINT MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR VIOLATIONS OF THEIR SIXTH AND FIFTH AMENDMENT RIGHTS (Doc. # 256)

On December 18, 2008, Defendant Bruce Furr filed a Motion to Dismiss the Superseding Indictment for Fifth Amendment Due Process Violations (Doc. # 254), alleging misconduct by the United States associated primarily with a civil action initiated by the Securities and Exchange Commission (SEC). Also on December 18, 2009, defendants Bruce Furr and Steven Furr filed a Motion to Dismiss the Superseding Indictment for Violations of the Sixth and Fifth Amendment Rights (Doc. # 256) asserting, among other things, that the United States is impermissibly interfering with their ability to present a defense. A modified briefing schedule on these motions ran its course, and on June 25, 2009, Magistrate Judge Patricia Gorence issued a Recommendation that this court deny both motions. The defendants' objections to the Recommendation, are now before the court.

On dispositive matters and certain other matters enumerated in § 636(b)(1)(A) and Fed. R. Crim. P 59, including motions to dismiss the indictment, a

magistrate judge may only propose findings and make recommendations. § 636(b)(1)(A), (B); Fed. R. Crim. P. 59(b)(1). A district court must review de novo the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2), (3). However, portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Thus, the de novo standard of review applies only to matters on which a party objects to a magistrate judge's recommendation (rather than an order) on the issues set forth in § 636(b)(1)(A) and Fed. R. Crim. P. 59(b)(1). § 636(b)(1)(A)-(C); Fed. R. Crim. P. 59(b).

BRUCE FURR'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR FIFTH AMENDMENT DUE PROCESS VIOLATIONS (Doc. # 254)

For the most part, the material background facts as set forth by Judge Gorence appear undisputed and need not be recited here. However, where alleged disputes of fact have been raised, they will be addressed below as necessary.

In his motion, Furr asserts that the United States used the SEC civil action for the sole purpose of obtaining evidence for its criminal prosecution and thereby violated Furr's due process rights. Framed as an Objection, Furr maintains essentially that the Recommendation fails to appreciate this argument. (*See* Furr Mem. in Supp. of Motion at 12; Furr Obj. at 11.)

Furr suggests that his claim should be viewed in light of the Supreme Court's decision in *United States v. Kordel*, 397 U.S. 1 (1970), which indicates that a due process violation may arise where the government brings a civil action in conscious effort to further a criminal prosecution. In that case, the respondents sought reversal of their convictions

due to "such unfairness and want of consideration for justice" arising out of parallel civil and criminal proceedings. 397 U.S. at 11.

The Court rejected their argument noting, among other things, that "[w]e do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution." *Id*.; *see also United States v. Stringer*, 535 F.3d 929 (9th Cir. 2008) (rejecting defendant's claim of a due process violation under *Kordel* and citing cases); *United States v. Mahaffy*, 446 F. Supp. 2d 115, 125-26 (E.D.N.Y. 2006) (noting SEC official's statement that discovery in civil action was sought without involvement of U.S. Attorney's office, which later brought parallel criminal charges against defendant, and rejecting due process claim).

Judge Gorence rejected this argument, and, upon review of the record, this court agrees that no due process violation exists. Furr's conclusory contention that the United States used the SEC civil action "solely to obtain evidence for [the] criminal prosecution," is not supported by the record. The record reflects that SEC initiated its investigation of the BCI defendants independently to vindicate the rights of defrauded investors, and the subpoena at issue sought documents and records from Furr related to that investigation. Indeed, despite Furr's contentions that the SEC's discovery demands were unconnected to the BCI investigation, the relevance of the SEC's discovery to that investigation was apparently addressed by the District Court for the Northern District of Indiana. As evidenced in the transcripts of proceedings before Judge McKinney, the court rejected Furr's assertion that the SEC's discovery demands fell outside the scope of that investigation. (*See* Doc. # 337 - Attachments). That the SEC investigation was initiated after the indictment was handed down in this case, and the discovery in the two cases

overlap, is insufficient to establish that Furr's constitutional rights were violated in the manner anticipated in *Kordel*. And, similar to *Mahaffy*, the record indicates that the SEC subpoenaed Furr without any direction from or involvement by the U.S. Attorney's office. *See* 446 F. Supp. 2d at 126 ("The facts in this case do not support a finding by this Court that the Government has engaged in any such egregious conduct as to constitute a violation of the universal sense of justice. The statement of Robert H. Murphy, Branch Chief in the Division of Enforcement in the New York Regional Office of the S.E.C., belies a conclusion that the investigations were intertwined."); (Doc. # 337). Without more, Furr's allegation on this point fails.

Furr's related argument, that in the aggregate the government has engaged in such outrageous behavior as to deprive him of his due process rights, must fail also. The outrageous behavior, according to FURR, is illustrated in various ways including, (1) the use of the SEC civil action solely to obtain evidence for the criminal prosecution (a theory already rejected); (2) searching his office in Bloomington, Indiana when the search warrant did not particularize his office; (3) withholding his IRS refund for two years; and (4) depriving him of his property and right to counsel by preventing him from using proceeds from sale of his business. (*See* Obj. at 18.) Furr has filed separate motions related to several of these assertions.

In considering similar claims, the Seventh Circuit has *never* taken the "extreme step of dismissing criminal charges against a defendant because of government misconduct." *United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006). For example, in *United States v. Childs*, the Seventh Circuit concluded that the government willfully

- 4 -

Case 2:07-cr-00057-CNC    Filed 08/25/09    Page 4 of 9    Document 347

suppressed impeachment evidence. The court noted that it was "convinced that the conduct of government was designed to deliberately mislead the court and defense counsel." *Id.* at 545. Yet, it refused to accept the defendant's argument that the government's conduct was "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* (quoting *United States v. Russell*, 411 U.S. 423, 431-32 (1973)).

Here, there is no evidence in the record of any conspiracy or other activity on the government's part that would constitute outrageous behavior to an extreme that would violate Furr's due process rights and require dismissal of the indictment. Indeed, Furr's claims of government misconduct are conclusory and without evidentiary support. In comparison with *Childs*, there is nothing in the record indicating that the government has misled the court or defense counsel on any matter.

Furr acknowledges the high hurdle he faces in making this claim, but faults the Recommendation for failing to explicitly distinguish this case from forty-year-old district court decisions in *United States v. Parrott*, 248 F. Supp. 196 (D.D.C. 1965) and *United States v. Rand*, 308 F. Supp. 1231 (N.D. Ohio 1970). However, those cases are not necessarily on point, and thorough recitation of them was not needed for the Recommendation to coherently reach its conclusion. For example, in *Rand* the court noted inter alia that the government knew of pending criminal proceedings against the defendant but did not inform the defendant, started an unnecessary civil action against the defendant to obtain evidence for the criminal action, and obtained information directly from the cooperative defendant after leading him to believe that he was immunized from

- 5 -

Case 2:07-cr-00057-CNC   Filed 08/25/09   Page 5 of 9   Document 347

prosecution. 308 F. Supp. at 1234. In his objections, Furr does not develop his assertion that this case "mirrors, if not exceed[s]" the situation in *Rand*, and in any event the record does not support such a contention.

BRUCE FURR'S AND STEVEN FURR'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR VIOLATIONS OF THEIR SIXTH AMENDMENT AND SIXTH AMENDMENT RIGHTS (Doc. # 256)

Bruce and Steven Furr filed a joint motion to dismiss the superseding indictment for violations of their Sixth Amendment and Fifth Amendment rights. Their primary argument is that the government, i.e. the DOJ and the IRS, blocked them from using significant, lawfully-obtained funds for their defense in violation of the Sixth Amendment. Specifically, they assert that (1) the DOJ forced IOS to limit payment of legal fees and costs to the Furrs, (2) the DOJ "review[ed] and restructur[ed] the sale of IOS with the express purpose of preventing the Furr Defendants from receiving any and all cash consideration from that transaction," (Obj. at 17); and (3) the IRS refused for two years to pay Bruce Furr an approximately $5 million tax refund to which he was entitled. For support, the Furrs rely, almost entirely, on comparison to the Second Circuit's decision in *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008). (*See* Obj. at 1.)

The Furrs' Objection to the Recommendation is a regurgitation of the arguments presented to Judge Gorence. Judge Gorence thoroughly examined *Stein* and concluded, after an extensive recitation of the record in this case, that "the facts in *Stein* are not only clearly distinguishable, but are not comparable in the least to the prosecution's actions in this case." (Rec. at 18.) This court agrees. The decision in *Stein* stemmed from certain material findings, including that (1) *but for* the Thompson Memorandum *and* the

coercive actions of the U.S. Attorney's office, KPMG would have paid the legal fees and expenses of all its partners and employees, 541 F.3d at 146; (2) KMPG's decision to cut off all payments of legal fees and expenses to anyone who was indicted and condition such payments on cooperation with the government was the *direct consequence* of pressure applied by the U.S. Attorney's office and thus constituted state action, *id*.; and (3) the government's interference with KPMG's commitment to pay the defendants' legal fees and costs lacked justification, *id.* at 156. The result was that several defendants were denied the ability to retain counsel of their choice, and all defendants were hindered in preparing their defense. *Id.* at 157.

In comparison, the record in this case does not reveal that government coercion was the sole cause of IOS's decision to limit payment of the Furrs' defense fees. *Cf. Stein*, 541 F.3d at 148 ("State action is established here as a matter of law because the government forced KPMG to adopt its constricted Fees Policy."). As discussed by Judge Gorence, there is nothing in the record indicating that the U.S. Attorney's office raised the subject of legal fees with IOS, let alone that advancement of such fees would be used against IOS in any manner. Indeed, the record reflects that IOS was in dire straits financially, undercutting any finding that the Furrs would have undoubtedly received unlimited payment of legal fees by IOS but for government coercion. *Cf. id.* at 155-56. Relatedly, unlike the situation in *Stein*, the Thompson Memorandum was never mentioned, much less repeatedly referred to by the government "to 'reinforce the threat inherent in that

- 7 -

document.'"[1]  And even assuming that all parties were aware of the Thompson Memorandum, the record does not reflect that provisions of that document led the U.S. Attorney's office to restrict IOS in advancing legal fees to the Furrs.

Further, as Judge Gorence noted, IOS and the government entered the Cooperation Agreement, which included provisions under which IOS agreed to escrow all distributions, profits, and proceeds from any sale of the company pending resolution of the criminal proceedings. (Rec. at 17.) The Furrs repeated assertion that the government wrongly coerced IOS into this Agreement is conclusory, even assuming IOS (with the approval of its Board) was working to relieve itself from indictment. It is not the mere request and receipt of cooperation that the *Stein* court found objectionable, but the totality of the circumstances in that case, including finding that the government's unjustified conduct barred certain defendants from retaining counsel of their choice and deteriorated the ability of the defendants to be represented as they choose. As Judge Gorence concluded, despite their attempts, the Furrs are simply unable to establish a constitutional violation in line with *Stein* under the circumstances.

---

[1] The Furrs assert that the use of the phrase "standard DOJ policy" in the charging letter must refer to the Thompson Memorandum and therefore must be interpreted to mean that the prosecution will take into account a company's advancement of attorneys fees in determining whether the company is cooperating. (Obj. at 6-7.) The Furrs evidence this link between the charging letter and the Thompson Memorandum through a statement made by an attorney working for a law firm that formerly represented IOS, who heard in 2005 from another attorney working for a different firm that the government would be guided by the Thompson Memorandum. (Obj. Ex. 1 - Affidavit of W. David Bernard.) As evidence of constitutional misconduct, this is a bit weak. As is the Furrs' supporting statement that "the Recommendation does not point to any alternative 'standard DOJ policy' to which the United States could have been referring." (Obj. at 7.) As such, Judge Gorence's note that unlike *Stein*, in which the government repeatedly referred to the Thompson Memorandum to reinforce the threat inherent in that document, "the charging letter of August 10, 2005, made no reference to the Thompson Memorandum and the letter said nothing about payment of legal fees," is entirely appropriate.

As for the contention regarding the withholding of Bruce Furr's tax return, Judge Gorence observed that the record failed to support the conclusion that the prosecution had knowledge of or role in the IRS's actions related to Bruce Furr. The actions of the IRS could be based on any number of legitimate factors unrelated to this case, and the defendants do little to tie this allegation to any constitutional violation that would require dismissal of the indictment.

Finally, the Furrs argument that the government's alleged misconduct constitutes a violation of their Fifth Amendment due process rights also fails. The Recommendation addressed nearly identical arguments presented in Bruce Furr's Motion to Dismiss for Fifth Amendment Due Process Violations. All of the Furrs' arguments on this point have been addressed and the Furrs present no authority indicating that the government's conduct, as already discussed and resolved, constitutes a violation of due process. Hence, upon de novo review of the motion and supporting materials,

IT IS ORDERED that the Magistrate Judge's Recommendation (Doc. # 316) is adopted.

IT IS FURTHER ORDERED that Bruce Furr's Motion to Dismiss for Fifth Amendment Due Process Violations (Doc. # 254) is denied.

IT IS FURTHER ORDERED that Bruce Furr's and Steven Furr's Joint Motion to Dismiss for Violations of Their Sixth and Fifth Amendment Rights (Doc. # 256) is denied.

Dated at Milwaukee, Wisconsin, this 25th day of August, 2009.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE

- 9 -

Case 2:07-cr-00057-CNC   Filed 08/25/09   Page 9 of 9   Document 347