UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                          Case No. 07-CR-57

THOMAS BALSIGER, et al.,

       Defendants.

DECISION AND ORDER OVERRULING DEFENDANTS THOMAS BALSIGER'S
AND JAMES CURREY'S OBJECTIONS TO THE MAGISTRATE JUDGE'S DECISION
AND ORDER OF JUNE 5, 2010 (DOC. # 408)

On June 5, 2010, Magistrate Judge Patricia Gorence issued a Decision and Order addressing defendants Thomas Balsiger's and James Currey's ("the defendants") argument that International Outsourcing Services, LLC (IOS) was coerced into waiving its attorney-client and work product privileges in exchange for dismissal of the indictment against IOS. Timely objections to Judge Gorence's Decision and Order were filed and they are now before the court for a decision.

Additionally, the defendants request an evidentiary hearing "to determine the impact of the United States Department of Justice's Thompson Memorandum and the government's conduct in the instant case on IOS's decision to waive its attorney-client and work product privileges." (Doc. # 411 at 11.) The government opposes the request.

I. REQUEST FOR EVIDENTIARY HEARING

The docket does not disclose that the defendants requested an evidentiary hearing before Judge Gorence as to whether IOS was coerced into waiving its attorney-client privilege. Thus, as the government points out, it appears that the defendants made no effort to comply with the local rules regarding requests for evidentiary hearings.

Criminal Local Rule 12(c) provides that any request for an evidentiary hearing must follow "a conference with the non-movant" and "provide a description of the material disputed facts that the movant claims require an evidentiary hearing." It also obligates the movant to "provide an estimate of the in-court time necessary for the hearing."

The government has written to the court respecting the defendants' failure to comply with Rule 12(c). In response, the defendants boldly assert that "the material disputed facts in this case are well known to the parties and to the court" and "[a]s such, Criminal Local Rule 12.3(c) has been satisfied."[1] (Doc. # 413 at 1.) According to the defendants, "[t]his is not an initial motion wherein the Court needs to be advised that the parties have met and tried to resolve the issues, or at least narrow them, prior to imposing on the Court's valuable time." (*Id.*)

The court appreciates the defendants' determination of which Local Rules are advisory. Regardless, the request for an evidentiary hearing will be denied.

According to the defendants, "the evidence submitted by defendants overwhelmingly supports the conclusion that the government coerced IOS into waiving its attorney-client and work product privileges." (Obj. 11.) Moreover, they contend that "Magistrate Judge Gorence's Decision and Order either discounts, ignores, or misconstrues every piece of evidence submitted by defendants Balsiger and Currey in support of their claim." (*Id.*) Yet they do not identify any additional evidence they wish to introduce, or name any witnesses they wish to call at an evidentiary hearing. Consequently, it appears that the defendants simply disagree with Judge Gorence's review of the "overwhelming

---

[1] The defendants are advised the there is no Criminal Local Rule 12.3(c), which they repeatedly cite to in their reply to the government's letter of June 23, 2010. (*See* Doc. # 413.)

evidence." Without more, there is no basis in the record for granting the defendants' request.

## II.  STANDARD OF REVIEW

A magistrate judge may decide nondispositive motions, although a party may object, i.e., appeal, the magistrate judge's order.  Fed. R. Crim. P. 59(a).  The court may set aside the magistrate judge's determination, or any portion of it, if an objecting party shows that the order is contrary to law or clearly erroneous.  *Id.*  The clear error standard means that the court can overturn the magistrate judge's ruling only if it is "left with the definite and firm conviction that a mistake has been made."  *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

In their objections to Judge Gorence's order, the defendants acknowledge the applicability of the clearly erroneous standard in this court's review of Judge Gorence's conclusion that IOS was not coerced into waiving its privileges. (*See* Doc. # 411 at 1, 3, 5, 11, 16-17.)  The government concurred in its response. (*See* Doc. # 414 at 2.) However, in their reply brief the defendants assert that "the government cites the incorrect standard of review," and that this court should consider their objections de novo. (Doc. # 415 at 1.)  Yet, the defendants offer no authority for this contention, and provide no justification for this midstream change.  Consequently, the court finds that the defendants have waived consideration of any argument regarding the applicable standard of review. *See Damato v. Sullivan*, 945 F.2d 982, 988 n.5 (7th Cir. 1991) ("'[A]rguments raised for the first time in a reply brief are waived.'" (quoting *Ippolito v. WNS, Inc.*, 864 F.2d 440, 455 n.12 (7th Cir. 1988)).

## III. ANALYSIS[2]

The defendants contend that "the government coerced IOS into waiving its attorney-client and work product privilege protections through its application of the definition of 'cooperation' contained in the Department of Justice's 'Principles of Federal Prosecution of Business Organizations' dated January 20, 2003 (now commonly referred to as the 'Thompson Memorandum')." (Obj. 1.) According to the defendants, "IOS would never have waived attorney-client and work product privilege protections but for the definition of cooperation contained in the Thompson Memorandum, the threats inherit [sic] in the Thompson Memorandum, the governments [sic] enforcement of the Thompson Memorandum, and the governments [sic] repeated requests for waiver of attorney-client privilege and work product privilege protections." (Obj. 10.) Consequently, the defendants demand that the government be "barred from accessing any of the communications or documents found in the files, on the computers, or elsewhere in the records" of three law firms associated with IOS, as well as all "fruits of the poisonous tree." (Obj. 2-3.)

In response, the government asserts that the defendants fail to articulate how their individual rights were violated by IOS's privilege waiver, that the defendants lack standing to litigate whether IOS's privilege waiver was coerced, and that in any event, the evidence does not support the defendants' contention that the government coerced IOS into waiving certain privileges.

In her Decision and Order, Judge Gorence reviewed the chronology of events leading to IOS's waiver of privilege and the government's corresponding decision to release

---

[2] The parties presented their arguments to Judge Gorence in various documents submitted during the course of ongoing privilege disputes. It appears that the relevant materials are found primarily in Docs. # 201, 214, 215, 218, and 248, and the exhibits attached thereto.

IOS from indictment.  She found that after multiple discussions and communications between the U.S. Attorney's Office and IOS's management and counsel, IOS entered a Cooperation Agreement through which it agreed to waive its attorney-client and work product privileges for any and all coupon-related and case-related documents.  In exchange, Judge Gorence further found that the government agreed to dismiss the indictment against IOS.

This court is troubled by several aspects of the defendants' position.  First, it is not apparent how the rights of the individual defendants were violated by IOS's allegedly coerced waiver of certain company-owned privileges.  The defendants contend that the government's coercion of IOS's privilege waiver violated their individual "constitutional rights to due process, effective assistance of counsel, and the right not to be compelled to be witnesses against themselves."  (Doc. # 248 at 7.)  However, the defendants are (and have been for some time) vigorously pursuing individual and joint defense attorney-client and work product privilege claims.  On this point, they submit that IOS's waiver has "forced [them] into the position of having to assert and litigate the validity of their individual and joint defense privilege claims."  But this, while "a time consuming, expensive, and arduous task," does not necessarily reveal a constitutional violation.  Moreover, it is not clear how the coercion of IOS into waiving its privileges violates the defendants' Sixth Amendment right to counsel as interpreted by the Supreme Court, and the defendants fail to develop this argument.

Nonetheless, the defendants point to *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008), as support despite Judge Gorence's thorough examination of *Stein* in reaching her decision. Like Judge Gorence, this court is hard pressed to draw the parallels

between this case and *Stein*, as pushed by the defendants. IOS and KPMG, the corporation in *Stein,* were in dire straights and seeking to avoid indictment. However, the holding in *Stein*—that the defendants were deprived of their Sixth Amendment rights—stemmed from certain material findings: (1) KPMG would have paid the legal fees and expenses of individual defendants who were its partners and employees, but for the Thompson Memorandum *and* the coercive actions of the U.S. Attorney's office, 541 F.3d at 146; (2) KPMG's decision to cut off all payments of legal fees and expenses to any employee who was indicted, and to condition payment of legal fees upon cooperation with the government, "*was the direct consequence*" of pressure applied by the U.S. Attorney's office and thus constituted state action, *id.* at 146-48; and (3) the government's interference with KPMG's commitment to pay the defendants' legal fees and costs lacked justification, *id.* at 156. Consequently, several defendants were found to have been denied the ability to retain counsel of their choice, and all defendants were hindered in preparing their defense. *Id.* at 152, 157.

Here, the defendants appear to believe that so long as they can show that IOS was pressed by the government into entering a Cooperation Agreement, their individual constitutional rights were violated in some fashion. Nonetheless, while expressing reservations about the standing of defendants Thomas Balsiger and James Curry, Judge Gorence proceeded to the merits of the defendants' claim. Judge Gorence's analysis of the facts is the focus of the defendants' objections before this court, as well as the government's response to the objections.

First, the defendants submit that Judge Gorence placed undue weight on evidence that none of the government's written communications with IOS referred to the

Thompson Memorandum specifically. They contend that the August 28, 2005, "target letter" from the government refers to the Thompson Memorandum implicitly by noting that the Department of Justice "solicits IOS's cooperation in uncovering all the facts about [the fraud ultimately charged in the indictment] and in accordance with standard DOJ policy concerning such matters." (*See* Obj. 13; Decision and Order 3). However, even assuming the defendants are correct that "standard DOJ policy" includes the Thompson Memorandum, this does not establish that Judge Gorence's findings were clearly erroneous, contrary to law, or that these defendants have suffered a constitutional violation. In fact, Judge Gorence specifically addressed this point, concluding that "[a]lthough the government did reference in one of its letters 'standard DOJ policy' regarding cooperation credit, there is no evidence that this was intended as an ultimatum to IOS to either waive its privileges or face indictment." (Decision and Order 13.[3])

Next, the defendants contend that Judge Gorence erred by "entirely discount[ing]" the government's letter of November 28, 2006, as "limited in scope and directed only towards a specific set of documents from a specific law firm." (Obj. 14; Decision and Order 14.) As noted by Judge Gorence, the government's November 28, 2006, letter to IOS seeks voluntary disclosure of documents related to any legal advice IOS may have received regarding certain billing practices at the heart of the government's investigation. According to the letter, one of the individual defendants stated that he believed the practices to be legal based on the advice of counsel. Absent voluntary

---

[3] Conveniently, the defendants omit this portion of Judge Gorence's Decision and Order in framing their argument on this point. (*See* Obj. 13.)

disclosure, the government states in the letter that it will attempt to subpoena any such records from the Scott Hulse law firm. (Decision and Order 3.)

The defendants contend that any legal advice provided by the Scott Hulse attorneys to IOS with regard to billing practices "is HUGE in its scope and significance." (Obj. 14.) But, aside from claiming that the letter "is a demand for waiver of attorney-client privilege protections under threat of indictment, plain and simple," (Obj. 13-14), the defendants fail to articulate how Judge Gorence's analysis is erroneous. Indeed, the language of the letter identifies the facts underlying the request (IOS may have been advised that the billing practices at issue were legal), and the scope of the request (records of the Scott Hulse firm related to such advice).

Next, the defendants challenge Judge Gorence's review of the April 11, 2007, IOS board minutes. They maintain that "the April 11, 2007, board meeting minutes . . . prove that IOS and defendant Balsiger consulted the McNulty Memorandum when attempting to get IOS released from the indictment," and that it was erroneous for Judge Gorence to discount this evidence by noting that nothing indicates what portions of the memorandum were read. (Obj. 14.) According to the defendants, it would be "ludicrous" to assume that Balsiger was consulting anything other than the "definition of cooperation" in the McNulty Memorandum. (*Id.*)

However, the defendants misstate the record and ignore key aspects of Judge Gorence's order addressing this point:

> even if defendant Balsiger had read that portion of the [McNulty] memorandum [related to waiver of attorney-client and work product privileges], this still would be insufficient to prove that the government coerced IOS's privilege waiver by

> reinforcing any threat contained in the McNulty Memorandum, just as the prosecutors in *Stein* reinforced threats contained in the Thompson Memorandum. A board member's independent decision to consider the McNulty Memorandum, without more, cannot establish government coercion.

(Decision and Order 14-15.) Moreover, the board minutes do not mention the "the McNulty Memorandum."

The only support for the defendants' contention that IOS and defendant Balsiger consider the McNulty Memorandum seems to be an internal IOS email dated June 7, 2007, noting that the April 11, 2007, board minutes should be updated to reflect, among other things, that Balsiger "read from the McNulty memo." Assuming the validity of the email, it appears that the minutes were never updated. (*See* Decision and Order 4; Doc. # 248 Ex. 16.[4]) In any event, given that the defendants' objection relies on a misreading of the Decision and Order, Judge Gorence's analysis requires no further discussion on this point.

Fourth, the defendants contend that Judge Gorence "discounts the April 27, 2007, board minutes, which state that 'the government has requested the Company agree to waive the attorney client privilege.'" (Obj. 15.) They offer that the "board minutes are direct evidence that the government was seeking IOS's waiver of attorney-client and work product protections." (*Id.*)

Again, the defendants misstate the record. Apparently, the revised board minutes indicate only that "the government would look favorably on the company's waiving of attorney client privilege with respect to requested information." Judge Gorence

---

[4] Judge Gorence notes that the email is "riddled with hearsay problems"; nonetheless, she considered the materials submitted. (Decision and Order 14 n.1.)

concluded that this portion of the board minutes concerned the government's April 25, 2007, letter, which reaffirmed its earlier request for cooperation in uncovering evidence of the alleged coupon fraud. While the defendants "disagree" with this conclusion, (Obj. 15), they decline to proffer more. Hence, there are no grounds for upsetting Judge Gorence's findings regarding the April 27, 2007, board minutes.

Fifth, the defendants attack Judge Gorence's conclusion that "it was actually IOS's idea to offer a waiver of privileges in return for dismissal from the indictment." (Obj. 15; Decision and Order 15.) Accordingly, the defendants argue that an email between Attorney James Richmond and Greg Rayburn "proves that cooperation was defined by the government." (Obj. 15.) In rejecting this argument, Judge Gorence observed that an email from Rayburn to Attorney Richmond dated April 26, 2007, states "the [IOS] Board is prepared to propose waiving privilege in order to achieve a settlement of some sort for IOS LLC." (Decision and Order 15; Doc. # 215 Ex. U.) Moreover, the email relied on by the defendants for this point indicates only that Attorney Richmond believed IOS needed to reach a pretrial diversion agreement with the government, and that possible conditions "could include the following: . . . cooperation, as defined by the government, which would likely include a waiver of attorney-client privilege." (Doc. # 215 Ex. T.) Review of these emails does not demonstrate that Judge Gorence's conclusion was in some way erroneous.

Next, the defendants object to Judge Gorence's determination that "defendants Balsiger and Currey have offered no evidence to contradict the government's assertion in its May 4, 2007, letter that on May 3, 2007, 'IOS offered complete cooperation, including waiver of all attorney-client privilege issues, in exchange for dismissal of the

current indictment against IOS without prejudice.'" (Obj. 15; Decision and Order 16.) The defendants assert that this conclusion "is clearly erroneous as it ignores the entire sequence of events leading up to the May 3, 2007, 'offer' and the well recognized effect of the Thompson Memorandum." (Obj. 15-16.)

This court has reviewed the Decision and Order and cannot find that Judge Gorence "ignored the entire sequence of events." Indeed, Judge Gorence discussed the record in this case and the events leading to the Cooperation Agreement thoroughly. Moreover, IOS was desirous to avoid indictment, and the record reflects that IOS was prepared to waive privilege to achieve settlement with the government.

Finally, the defendants contend that Judge Gorence erred by not adopting the rationale of *Regents of the University of California v. Superior Court of San Diego County,* 81 Cal. Rptr. 3d 186 (Ct. App. 2008). In her Decision and Order, Judge Gorence discussed *Regents*, was not persuaded by its nonbinding rationale, and found that its facts were clearly distinguishable from the evidence before her in this case. This court agrees. Most importantly, the defendants in *Regents* were asserting their own privilege claims, and the court did not invoke a constitutional analysis applicable to the instant case. Therefore,

IT IS ORDERED that defendants Balsiger's and Currey's objections to the magistrate judge's Decision and Order of June 5, 2010, (Doc. # 411) is overruled.

Dated at Milwaukee, Wisconsin, this 16th day of August, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE